IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 10-40052 |
| | § | |
| VAN HUNTER DEVELOPMENT, LTD | § | Chapter 11 |
| | § | |
|    Debtor. | § | |
| | § | |

# DISCLOSURE STATEMENT OF
# VAN HUNTER DEVELOPMENT, LTD. PURSUANT TO 11 U.S.C. § 1125

The Debtor hereby submits this Disclosure Statement for Plan of Reorganization of Van Hunter Development, Ltd. ("Disclosure Statement"), pursuant to Section 1125 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code"), in connection with the solicitation of votes of the Plan of Reorganization of Van Hunter Development, Ltd. (the "Plan"), filed with the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") in the above-referenced case.

A copy of the Plan is set forth as **Exhibit A** to this Disclosure Statement. Capitalized terms used herein and not otherwise defined herein have the meanings assigned to them in the Plan.

## I. INTRODUCTION AND SUMMARY

**1.01. Introduction**. On January 4, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

The Debtor is a limited partnership which owns various lots in the exclusive Chateau du Lac subdivision in Flower Mound, Texas (collectively, the "Property"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee, or examiner has been appointed in this case.

A true and correct copy of the Debtor's Schedules and Statement of Affairs and any amendments thereto are on file with the Court and are available for inspection or upon request from counsel for the Debtor.

**1.01. Summary of the Plan**. The Debtor owned 31 lots of residential real property located in Flower Mound, Texas in a subdivision called The Enclave at Chateau Du Lac. The Debtor has two separate secured lenders, Frost National Bank and Compass Bank, both of which have liens on separate lots. The Debtor's Plan contemplates the principal of one of the partners of the Debtor will be contributing sufficient capital to pay off all of the Debtor's debt obligations to its various secured creditors, unsecured creditors and the taxing authorities in full. The Debtor has one unencumbered lot which will be returned to Compass in return for a credit as set forth in the Plan.

**1.02. Discharge and Release.** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to the Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective claims, debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of the Plan.

Confirmation of the Plan discharges the Debtor from all of his pre-confirmation debts and liabilities except as expressly provided for in the Plan and Section 1141(d) of the Code. The Debtor intends to request that the Bankruptcy Court discharge the Debtor upon confirmation of the Plan. Confirmation makes the Plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the Plan.

**1.03. Exhibits to this Disclosure** Statement. The exhibits attached to this Disclosure Statement are as follows:

Exhibit A – Plan of Reorganization.

## II. REPRESENTATIONS

     **2.01.** [Note: Subsequent paragraphs in brackets are to be included after the Court approves this Disclosure Statement.]

     **2.02.** [This Disclosure Statement is provided pursuant to Section 1125 of the Bankruptcy Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of his Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.]

     **2.03.** [After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

     **2.04. THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION OF THE BANKRUPTCY COURT EITHER FOR OR AGAINST THE PLAN.**

     **2.05. NO REPRESENTATIONS WITH RESPECT TO THE DEBTOR, HIS ASSETS, FUTURE BUSINESS OPERATIONS, RESULTS OF OPERATION OR FINANCIAL CONDITION HAVE BEEN AUTHORIZED BY THE PROPONENT OR ANY OTHER PERSON OTHER THAN REPRESENTATIONS CONTAINED HEREIN. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE PROPONENT FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS OR RECORDS OR OBTAINED FROM OTHER SOURCES BELIEVED BY THE PROPONENT TO BE ACCURATE. UNLESS OTHERWISE INDICATED, NONE OF THE INFORMATION CONTAINED HEREIN HAS BEEN SUBJECTED TO AN AUDIT. THE PROPONENT DISCLAIMS ANY ACKNOWLEDGMENT CONCERNING THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION PROVIDED BY OTHERS.**

     **2.06. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED HEREIN ARE QUALIFIED BY REFERENCE TO THE PLAN AND THE OTHER DOCUMENTS THEMSELVES. ALL THE APPENDICES AND SCHEDULES TO THE PLAN NOT INCLUDED HEREWITH WILL BE FILED WITH THE BANKRUPTCY COURT AND AVAILABLE FOR INSPECTION IN THE OFFICE OF THE CLERK OF THE BANKRUPTCY COURT DURING NORMAL COURT HOURS, NOT FEWER THAN 10 DAYS PRIOR TO THE CONFIRMATION HEARING OR SUCH SHORTER PERIOD AS THE BANKRUPTCY COURT MAY ALLOW.**

     **2.07. THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN. DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND/OR THE DATES THE MATERIAL RELIED UPON**

IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED. ANY ESTIMATES OF CLAIMS AND INTERESTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE BANKRUPTCY COURT.

2.08. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER STATUTE OR RULE OF SIMILAR IMPORT.

2.09. EACH CREDITOR SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS SOLICITATION, THE PLAN, OR THE TRANSACTIONS CONTEMPLATED THEREBY.

2.10. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES AGENT NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES AGENCY PASSED UPON THE ACCURACY OR THE ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

2.11. THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

## III. CHAPTER 11 PLAN CONFIRMATION AND CONSUMMATION PROCEDURE

**3.01. Purpose of Disclosure Statement and Source of Information**. The Debtor submits this Disclosure Statement pursuant to Section 1125 of the Code to all known claimants against the Debtor for the purpose of disclosing that information which the Court has determined is material, important and necessary in order for creditors of the Debtor to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtors' Plan. This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

**3.02. Explanation of Chapter 11.** Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a Debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or holders of interests in, the debtor. Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to claimants to satisfy the requirements of Section 1125 of the Code.

Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan in order for it to be confirmed by the Court. The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The Plan, however, must be accepted by at least the holder of one class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

**3.03. Solicitation and Voting Procedures.** The Proponent must solicit votes from the holders of claims and interests against the Debtor who are entitled to vote on the Plan.

**3.04. Who May Vote.** Under Section 1126 of the Bankruptcy Code, each Class of impaired claims or impaired interests is entitled to vote on the Plan. In order for the Plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan.

Holders of claims that are not impaired under the Plan are conclusively presumed, pursuant to Section 1126(f) of the Bankruptcy Code, to have accepted the Plan and holders of claims and interests that do not receive any distribution under the Plan are conclusively presumed, pursuant to Section 1126(g) of the Bankruptcy Code, to have rejected the Plan. There are no equity-security holders of the Debtor because he is an individual, and thus no class of interests in this case.

**3.05. Definition of Impairment**. Under Section 1124 of the Bankruptcy Code, a Class is "impaired" under a plan of reorganization unless, with respect to each claim or each interest in such Class, the plan of reorganization

(a) leaves unaltered the legal, equitable and contractual rights to which such claim or such interest entitles the holder; or

(b), notwithstanding any applicable law or any contractual provision that entitles the holder to receive accelerated payment of such claim or such interest after the occurrence of a default, (i) cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, (ii) reinstates the maturity of such claim or such interest as such maturity existed before the default, (iii) compensates the holder for any damages incurred as a result of any reasonable reliance by such holder on such applicable law or such contractual provision, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such claim or such interest entitles the holder.

Class 1 is unimpaired, and is deemed to have accepted the Plan. Accordingly, Class 1 is not entitled to vote on the Plan. Classes 2 through 6 are impaired and are entitled to vote on the Plan.

**3.06. Ballots.** Ballots will be provided to persons holding claims in all impaired Classes. A vote to accept or reject the Plan can only be made by proper submission of a duly completed and executed ballot. Instructions for balloting will be included with the notice accompanying this Disclosure Statement.

**3.07. Voting Deadline and Delivery Instructions.** Instructions for voting and delivery of ballots will be included with the notice accompanying this Disclosure Statement.

**3.08. Confirmation.** The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing to determine whether the Plan meets the requirements for confirmation set forth in the Bankruptcy Code.

Section 1128 of the Bankruptcy Code provides that any party in interest, whether or not entitled to vote on the Plan, may object to the confirmation of the Plan. Instructions for objecting will be included with the notice accompanying this Disclosure Statement. Any such objection must comply with all of the requirements of the order and the notice accompanying this Disclosure Statement.

The Bankruptcy Court will confirm the Plan at the Confirmation Hearing only if the requirements set forth in the Bankruptcy Code are satisfied. These requirements include, among other requirements, that

(i) the Plan (a) has been accepted by each impaired class of claims or interests, except as otherwise described in the Bankruptcy Code or (b) is determined to be "fair and equitable" and not to "discriminate unfairly" with respect to any impaired Class which has not accepted the Plan;

(ii) the Plan is in the "best interest" of the holders of the impaired Class which has not accepted the Plan; and

(iii) the Plan is feasible.

The Proponent is soliciting the acceptance of holders of claims in Classes 2-5. Section 1126 of the Bankruptcy Code generally defines acceptance of a plan of reorganization, in the case of a class of claims, as acceptance by holders of two-thirds in dollar amount and a majority in number of allowed claims of that Class with respect to which ballots have been submitted.

Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class of claim or interests accept the Plan or receive or retain under the Plan, on account of such claim or interest, property of a value as of the Effective Date of the Plan that is not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan, on account of such claim, property of a value, as of the Effective Date, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

**3.09. Best Interest of Creditors**. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. The Plan proposes to pay the secured creditor its regular monthly payment and a dividend to unsecured creditors to the extent that funds are available. If this case was in a Chapter 7, a trustee would need to hire a management company and other outside vendors to perform services that the Debtor's principal does currently. With the higher costs, it may not be economical for the Trustee to manage the Property while trying to obtain a buyer. If the Property was liquidated in the current real estate market at a fire sale, the proceeds of the sales probably would be sufficient only to pay the secured debt against the Property. Accordingly, the Plan satisfies the requirements of § 1129(a)(7).

**3.10. Confirmation Without Acceptance by All Impaired Classes ("Cramdown").** The Bankruptcy Court may confirm the Plan without acceptance by all of the impaired Classes of claims and interests if the requirements of Section 1129(b) of the Bankruptcy Code are satisfied, which include

(a) the Plan otherwise satisfies the requirements for confirmation;

(b) at least one impaired Class of claims or interests has accepted the Plan (without counting acceptances by insiders); and

(c) the Plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired Class that has not accepted the Plan.

**3.11. Unfair Discrimination.** As more fully set forth in the Bankruptcy Code, a plan of reorganization does not "discriminate unfairly" if a dissenting Class is treated substantially equally with respect to other Classes similarly situated and no class receives more than it is

legally entitled to receive for its claims or interests. The Debtor does not believe that the Plan discriminates unfairly against any impaired Class of claims or interests.

**3.12. Fair and Equitable.** Section 1129(b) of the Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and equity security holders. The respective tests in relevant part are:

*Secured Creditors.* The Plan is "fair and equitable" to a class of secured claims if it provides that

(i) the secured creditor retains the lien(s) securing such creditor's claim and receive deferred cash payments of at least the allowed amount of such claim (of a value, as of the Effective Date, of at least such secured creditor's interest in the estate's interest in such property); or

(ii) such secured creditor receives the indubitable equivalent of its claim (which may be satisfied by returning the collateral securing such creditor's claim to such creditor).

*Unsecured Creditors.* The Plan is "fair and equitable" with respect to a class of unsecured claims if on account of such creditor's Allowed Claim

(i) each impaired unsecured creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(ii) the holders of any claims or interests that are junior to the claims of (insert) the dissenting class do not receive or retain any property under the Plan.

**If all of the applicable requirements for confirmation of the Plan are met as set forth in §1129(a) of the Bankruptcy Code, except that any impaired Class rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to such rejecting Class.**

**3.13. Treatment of Priority Tax Claims**. The secured claim of the Dallas County will be satisfied and paid in full at the time of the closing on the Property.

**3.14. Feasibility**. The Bankruptcy Code requires that Confirmation of a Plan not be likely to be followed by liquidation or need for further financial reorganization of the Debtor. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed his ability to meet his obligations under the Plan, and the Debtor does not believe confirmation of the Plan is likely to be followed by liquidation or the need for further financial reorganization.

**3.15. Effective Date**. The Plan will be consummated on the Effective Date, which shall be 30 days after the order of the Bankruptcy Court confirming the Plan.

## IV. FINANCIAL PICTURE OF THE DEBTOR

**4.01. History and Background of the Debtor**. The Debtor partnership was first formed in 2005 for the purpose of developing a high end residential community in Flower Mound, Texas. Shortly after its formation, the Debtor purchased two tracts of raw land with financing from Compass Bank and Frost Bank. The Debtor then platted the lots, put in streets and utilities as well as other amenities, such as a par three golf course, a four acre pond, extensive landscaping, a privacy wall and three fountains. The amenities were completed in the summer of 2007. The Debtor is a limited partnership whose two principals are Gary Evans and Corey Van Trease.

**4.02. Events Leading to Chapter 11.** The Debtor's marketing efforts were at an initial stage when the real estate market collapsed as part of the financial crash of 2008. Demand for luxury residential property evaporated and the lots stopped selling. The Debtor's funding source, which is a principal of one of the Debtor's partners, stopped funding the partnership and the loans went into default. Compass Bank posted the portion of the Debtor's lots, which were subject to the Compass lien. The Debtor was forced to file a Chapter 11 to prevent Compass from foreclosing on its lots.

**4.03. Events Since Filing for Chapter 11**. Since the Petition Date, the Debtor has continued to operate its business and to manage its properties as debtor-in-possession pursuant to Section 1107 and Section 1108 of the Bankruptcy Code. With the approval of the Bankruptcy Court, the Debtor retained Singer & Levick, P.C., 16200 Addison Road, Suite 140, Addison, Texas 75001, as general bankruptcy counsel.

Since the filing of the case, Compass Bank filed its Motion for Relief from Stay which motion was granted by Agreed Order dated April 23, 2010. Compass subsequently foreclosed on the lots and pursuant to the terms of the Agreed Order, granted to Debtor a $5.5 million credit based on the foreclosure.

Frost National Bank subsequently sued the guarantors Gary Evans and Corey Van Trease on their guaranties and obtained an Agreed Judgment on March 22, 2011.

An Agreed Order was entered on July 29, 2010 granting the Friends of Chateau du Luc permission to manage the subdivision until, i*nter alia*, a plan is confirmed.

**4.04. Post-Confirmation Management**. Upon Confirmation of the Debtor's Plan, Gary Evans will manage the assets. Gary Evans is a principal of an entity which owns part of the Debtor.

## V. CLASSIFICATION OF CLAIMS AND INTERESTS

**5.01.** The Allowed Claims of the creditors and of the Estate shall be classified as follows:

(1) Class 1 consists of any Allowed Administrative Claims.

(2) Class 2 consists of the secured claim of the Taxing Authorities.

(3) Class 3 consists of the Secured Claim of Compass Bank.

(4) Class 4 consists of the Secured Claim of Frost National Bank.

(5) Class 5 consists of any Allowed General Non-Lienholder Unsecured Creditor Claims.

(6) Class 6 consists of any Allowed General Insider Unsecured Creditor Claims.

(7) Class 7 consists of any Allowed Secured Claims of Equity Interests.

## VI. TREATMENT OF CLAIMS AND INTERESTS

**6.01 Class 1 (Administrative Claims).** Allowed Class 1 Claims will be paid in full by the Debtor and on or before the Effective Date, or, if applicable, within 30 days from the date on which an order allowing a Class 1 Claim becomes a Final Order, whichever is later. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorneys' fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Class 1 Claims may agree to a different treatment.

**6.02 Class 2 (Secured Claim of Taxing Authorities).** The secured claim of the Taxing Authorities on the Frost Lots will be satisfied and paid in full by December 31, 2011. The Taxing Authorities shall retain all of their liens. Compass will be responsible for the tax liability on the Lot once it has received title to same.

**6.03 Class 3 (Secured Claim of Compass Bank).** The deficiency claim of Compass Bank will be partially satisfied by the transfer to it of the Debtor's interest in the Lot, which has been valued at $275,000.00. Gary Evans will pay the remaining amounts owed to Compass via <u>monthly</u> interest payments at the approximate interest rate of 6% for the next twenty-four months with a final balloon at the end of twenty-four months.

**6.04 Class 4 (Frost National Bank).** Frost will have an allowed secured claim in the amount of the Agreed Judgment. Frost's liens on any of the Frost Lots shall remain in full force. The secured claim of Frost National Bank will be satisfied by a payment of $250,000.00 on the Effective Date and payment of all outstanding remaining amounts owed under the Agreed Judgment in full by December 31, 2011. As soon as Frost is paid in full, Frost shall release all of its outstanding liens on the Frost Lots and shall execute any documents required to release such liens. Frost will execute partial releases of liens as necessary for any individual lots to be sold.

**6.05 Class 5 (General Non-Lienholder Unsecured Creditor Claims).** The allowed claims of general non-insider unsecured creditors will be paid in full by semi-annual equal payments with no interest and a final payment two years after the Effective Date.

**6.06    Class 6 (General Insider Unsecured Creditor Claims).**  The allowed claims of general insider unsecured creditors will receive no distribution.

**6.07    Class 7 (Equity Interests).**  Gary Evans, through his entity Global Hunter Holdings, L.P., will own 100% of the assets of the Debtor in exchange for his funding of the Plan.  All other equity interests will be cancelled.  Mr. Evans is a principal of the Debtor.

## VII.    IMPLEMENTATION OF THE PLAN

**7.01.    Funding of the Plan**.  The funds required for the implementation of the Plan and the distribution hereunder shall be provided by Gary Evans.  Gary Evans is the principal of the Debtor and will have full ownership of Global Hunter Holdings, L.P. which will own 100% of the assets of the Debtor on the Effective Date.

**7.02.    The Confirmation Order**.  The Confirmation Order shall empower and authorize the Debtor and any other necessary party to take or cause to be taken, on or prior to the Effective Date, all actions which are necessary to enable them to implement effectively the provisions of the Plan.

## VIII.    ALTERNATIVES TO THE PLAN - LIQUIDATION

**8.01.**    If a plan of reorganization is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which a bankruptcy trustee would be appointed to liquidate the assets of the Debtor for distribution to the holders of claims against the Debtor in accordance with priorities established by the Bankruptcy Code.

**8.02.    The Debtor believes that a liquidation under Chapter 7 would result in little or no payments to unsecured creditors** due to (1) the current status of the real estate market, which is widely known, (2) the increased costs and expenses arising from fees payable to a bankruptcy trustee and attorneys and other professional advisors to such trustee in a chapter 7, (3) the erosion of the value of the Debtor's assets in the context of an expedited liquidation required under chapter 7, particularly due to the necessity of maintaining insurance on the Properties, and the "fire sale" atmosphere that would prevail. Further, a chapter 7 trustee would incur management and maintenance expenses as he operates the Property while listing it for sale. These costs, which would be significantly higher for a chapter 7 trustee required to engage a property manager than the Debtor's costs in performing these tasks himself, would further erode the distribution

## IX.    RISK FACTORS

**9.01.    ARE THERE ANY RISK FACTORS?    Claimants should be aware that there are some risks involved under the Plan because the Plan relies on its funding by Gary Evans.**

## X.    RETENTION OF JURISDICTION

**10.01.**  The Bankruptcy Court's jurisdiction shall be retained under the Plan to the full extent provided by Title 28 and Title 11 of the United States Code.  This Plan shall be the sole

and exclusive remedy for any creditor of the Debtor dealt with in the Plan, so long as the Debtor is not in default under the Plan.

## XI. TAX CONSEQUENCES TO THE DEBTOR AND OTHERS

**11.01.** Implementation of the Plan may result in state and federal income tax consequences to the holders of claims and to the Debtor.

Section 1115 of the Bankruptcy Code, as enacted by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005 (BAPCPA) provides that, for individual chapter 11 debtors, property of the estate includes property acquired after filing, but before closure, dismissal, or conversion. It also provides that property of the estate includes earnings from services performed after filing, but before closure, dismissal, or conversion. IRS Notice 2006-83 established policies and procedures related to the fact that such property and services are subject to taxation as part of the individual chapter 11 estate. With some exceptions, when 11 U.S.C. § 1115 is read in conjunction with section 1398(e)(1) of the Internal Revenue Code, the IRS guidance notes that the bankruptcy estate is a taxable entity separate from the debtor and must include in its gross income both post-petition property and post-petition services.

Because the bankruptcy estate is a separate taxable entity, the trustee or debtor in possession must obtain an employer identification number (EIN) for the estate, I.R.C. § 6109, and the trustee or debtor-in-possession must use the EIN on any tax returns filed for the estate. The individual debtor must continue to file his or her own individual tax returns during the bankruptcy proceedings. IRC. § 6012(a)(1).

Section 1115 provides that post-petition self-employment income is property of the estate. However, because neither section 1115 nor section 1398 of the Internal Revenue Code addresses the application of the self-employment tax to the earnings from the individual debtor's continuing services, the IRS has counseled that a self-employed debtor must continue to report the debtor's self-employment income earned post-petition on Schedule SE of the debtor's individual tax return, and must pay the resulting self-employment tax imposed by I.R.C. § 1401.

The debtor must attach a statement to his or her income tax return stating that he or she filed a Chapter 11 bankruptcy case. The statement must reflect the allocations of income and withheld income tax and must describe the method used to allocate income and withheld tax between the debtor and the estate. The statement is to list the filing date of the bankruptcy case, the bankruptcy court in which the case is pending, the bankruptcy court case number, and the bankruptcy estate's EIN. The debtor-in-possession or trustee must attach a similar statement to the income tax return of the estate.

IRS Notice 2006-83 provides numerous other requirements and guidelines for individuals who file bankruptcy cases under Chapter 11 of the Bankruptcy Code. A copy of IRS Notice 2006-83 is attached hereto as Exhibit D. The debtor-in-possession has obtained an EIN number and the accountant for the debtor and debtor-in-possession is preparing separate tax returns in accordance with the applicable provisions of the Internal Revenue Code, the United States Bankruptcy Code, and IRS Notice 2006-83.

**11.02.** Tax consequences to a particular creditor will depend on the particular circumstances or facts regarding the claim of the creditor. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## XII. LITIGATION

**12.01. Preservation of Causes of Action**. Any and all causes of action which the Debtor may have, or which may arise under any of the provisions of the Code, or which may be enforceable under any of the provisions of the Code or any other law or statute, including claims of the Debtor and the estate, shall be preserved, including without limitation those described herein. The Bankruptcy Court shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes of action unrelated to bankruptcy, whether denominated core or non-core matters, or whether "related or otherwise related" matters, to the extent provided by Title 11 and Title 28 of the United States Code. All such causes of action shall belong to the Debtor upon the Effective Date. To the extent any cause of action shall be non-transferable to the Debtor, the Debtor shall prosecute such cause of action for the benefit of the Estate.

## XIII. SUMMARY

Debtor has filed this Disclosure Statement and the respective Plan, and favors acceptance of this Disclosure Statement and Confirmation of the Plan. There exists no other option that offers a more favorable distribution to unsecured creditors than that proposed in this Disclosure Statement and Plan. Creditors will receive much larger sums under the Plan than if the Debtor were liquidated under a Chapter 7, because the Debtor believes creditors will receive little or nothing in a liquidation.

DATED: May 13, 2011.

          Respectfully submitted,

          SINGER & LEVICK, P.C.

          By:  /s/Larry A. Levick
             Larry A. Levick
             State Bar No. 12252600
             Michelle E. Shriro
             State Bar No. 18310900

          16200 Addison Road, Ste. 140
          Addison, Texas 75001
          Tel. (972) 380-5533
          Fax (972) 380-5748

          ATTORNEYS FOR VAN HUNTER DEVELOPMENT, LTD.