IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VAN HUNTER DEVELOPMENT, LTD., | § | CASE NO. 10-40052 |
| | § | (Chapter 11) |
| DEBTOR | § | |

## DISCLOSURE STATEMENT REGARDING PLAN OF LIQUIDATION

The Frost National Bank and Corey Van Trease (collectively the "Plan Proponents") submit this Disclosure Statement Regarding Plan of Liquidation pursuant to Section 1125 of the United States Bankruptcy Code as follows:

A copy of the Plan of Liquidation (the "Plan") is set forth as **Exhibit "A"** to this Disclosure Statement. Capitalized terms used herein and not otherwise defined herein have the meanings assigned to them in the Plan of Liquidation.

## I. INTRODUCTION AND SUMMARY

**1.01. Introduction.** On January 4, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

The Debtor is a limited partnership which owns various lots in the exclusive Chateau du Lac subdivision in Flower Mound, Texas (collectively, the "Property"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee, or examiner has been appointed in this case.

A true and correct copy of the Debtor's Schedules and Statement of Affairs and any amendments thereto are on file with the Court and are available for inspection or upon request from counsel for the Debtor.

**1.01. Summary of the Plan.** The Debtor currently owns 11 lots of residential real property located in Flower Mound, Texas in a subdivision called The Enclave at Chateau Du Lac. Ten of the lots are subject to the secured claim of The Frost National Bank ("Frost") and one lot is unencumbered. The Debtor has placed a $75,000.00 retainer with its bankruptcy counsel. The Debtor has scheduled a value of approximately $24,000.00 for various other property consisting of bank accounts, accounts receivable, equipment, and a gold cart, but such property is believed to have a nominal fair market value at this time.

The Plan contemplates the liquidation of all property of the Debtor. The retainer will be used to satisfy administrative claims in the Debtor's case. The proceeds of Frost's collateral will be used to satisfy closing costs and property taxes secured by such property with the remainder paid to Frost. The remainder of the retainer, the net proceeds of the sale of the unencumbered lot remaining after closing costs and taxes, and the proceeds of the liquidation of all other property of the Debtor will be used to satisfy the Allowed IRS Claim and the remainder will be distributed

1

to general unsecured creditors up to 100% of their claim. The Debtor's equity holders will receive no value or distribution until all other classes are paid in full.

**1.02. Ongoing Operations.** The Plan does not contemplate the Debtor continuing to operate. Instead, the Debtor shall be dissolved after liquidating its property and completing all other actions under the Plan.

**1.03. Exhibits to this Disclosure** Statement. The exhibits attached to this Disclosure Statement are as follows:

Exhibit A — Plan of Reorganization.

## II. REPRESENTATIONS

**2.01.** [Note: Subsequent paragraphs in brackets are to be included after the Court approves this Disclosure Statement.]

**2.02.** [This Disclosure Statement is provided pursuant to Section 1125 of the Bankruptcy Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of this Plan, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.]

**2.03.** [After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

**2.04. THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION OF THE BANKRUPTCY COURT EITHER FOR OR AGAINST THE PLAN.**

**2.05. NO REPRESENTATIONS WITH RESPECT TO THE DEBTOR, ITS ASSETS, FUTURE BUSINESS OPERATIONS, RESULTS OF OPERATION OR FINANCIAL CONDITION HAVE BEEN AUTHORIZED BY THE PLAN PROPONENTS OR ANY OTHER PERSON OTHER THAN REPRESENTATIONS CONTAINED HEREIN. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE PLAN PROPONENTS FROM INFORMATION CONTAINED IN THE DEBTOR'S BANKRUPTCY CASE AND SOURCES BELIEVED BY THE PROPONENT TO BE ACCURATE. UNLESS OTHERWISE INDICATED, NONE OF THE INFORMATION CONTAINED HEREIN HAS BEEN SUBJECTED TO AN AUDIT. THE PLAN PROPONENTS DISCLAIM ANY ACKNOWLEDGMENT CONCERNING THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION PROVIDED BY OTHERS.**

**2.06. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED HEREIN ARE QUALIFIED BY REFERENCE TO THE PLAN AND THE**

OTHER DOCUMENTS THEMSELVES. ALL THE APPENDICES AND SCHEDULES TO THE PLAN NOT INCLUDED HEREWITH WILL BE FILED WITH THE BANKRUPTCY COURT AND AVAILABLE FOR INSPECTION IN THE OFFICE OF THE CLERK OF THE BANKRUPTCY COURT DURING NORMAL COURT HOURS, NOT FEWER THAN 10 DAYS PRIOR TO THE CONFIRMATION HEARING OR SUCH SHORTER PERIOD AS THE BANKRUPTCY COURT MAY ALLOW.

2.07. THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN. DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND/OR THE DATES THE MATERIAL RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED. ANY ESTIMATES OF CLAIMS AND INTERESTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE BANKRUPTCY COURT.

2.08. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER STATUTE OR RULE OF SIMILAR IMPORT.

2.09. EACH CREDITOR SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS SOLICITATION, THE PLAN, OR THE TRANSACTIONS CONTEMPLATED THEREBY.

2.10. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES AGENT NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES AGENCY PASSED UPON THE ACCURACY OR THE ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

2.11. THE PLAN PROPONENTS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

## III. CHAPTER 11 PLAN CONFIRMATION AND CONSUMMATION PROCEDURE

**3.01. Purpose of Disclosure Statement and Source of Information.** The Plan Proponents submit this Disclosure Statement pursuant to Section 1125 of the Code to all known claimants against the Debtor for the purpose of disclosing that information which the Court has determined is material, important and necessary in order for creditors of the Debtor to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Plan. This Disclosure Statement describes the liquidation of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights.

**3.02. Explanation of Chapter 11.** Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a Debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or holders of interests in, the debtor. Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to claimants to satisfy the requirements of Section 1125 of the Code.

Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan in order for it to be confirmed by the Court. The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The Plan, however, must be accepted by at least the holder of one class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

**3.03. Solicitation and Voting Procedures.** The Plan Proponents must solicit votes from the holders of claims and interests against the Debtor who are entitled to vote on the Plan.

**3.04. Who May Vote.** Under Section 1126 of the Bankruptcy Code, each Class of impaired claims or impaired interests is entitled to vote on the Plan. In order for the Plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan.

Holders of claims that are not impaired under the Plan are conclusively presumed, pursuant to Section 1126(f) of the Bankruptcy Code, to have accepted the Plan and holders of claims and interests that do not receive any distribution under the Plan are conclusively presumed, pursuant to Section 1126(g) of the Bankruptcy Code, to have rejected the Plan. There are no equity-security holders of the Debtor because he is an individual and thus no class of interests in this case.

**3.05. Definition of Impairment.** Under Section 1124 of the Bankruptcy Code, a Class is "impaired" under a plan of reorganization unless, with respect to each claim or each interest in such Class, the plan of reorganization

(a) leaves unaltered the legal, equitable and contractual rights to which such claim or such interest entitles the holder; or

(b), notwithstanding any applicable law or any contractual provision that entitles the holder to receive accelerated payment of such claim or such interest after the occurrence of a default, (i) cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, (ii) reinstates the maturity of such claim or such interest as such maturity existed before the default, (iii) compensates the holder for any damages incurred as a result of any reasonable reliance by such holder on such applicable law or such contractual provision, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such claim or such interest entitles the holder.

**3.06. Ballots.** Ballots will be provided to persons holding claims in all impaired Classes. A vote to accept or reject the Plan can only be made by proper submission of a duly completed and executed ballot. Instructions for balloting will be included with the notice accompanying this Disclosure Statement.

**3.07. Voting Deadline and Delivery Instructions.** Instructions for voting and delivery of ballots will be included with the notice accompanying this Disclosure Statement.

**3.08. Confirmation.** The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing to determine whether the Plan meets the requirements for confirmation set forth in the Bankruptcy Code.

Section 1128 of the Bankruptcy Code provides that any party in interest, whether or not entitled to vote on the Plan, may object to the confirmation of the Plan. Instructions for objecting will be included with the notice accompanying this Disclosure Statement. Any such objection must comply with all of the requirements of the order and the notice accompanying this Disclosure Statement.

The Bankruptcy Court will confirm the Plan at the Confirmation Hearing only if the requirements set forth in the Bankruptcy Code are satisfied. These requirements include, among other requirements, that

(i) the Plan (a) has been accepted by each impaired class of claims or interests, except as otherwise described in the Bankruptcy Code or (b) is determined to be "fair and equitable" and not to "discriminate unfairly" with respect to any impaired Class which has not accepted the Plan;

(ii) the Plan is in the "best interest" of the holders of the impaired Class which has not accepted the Plan; and

(iii) the Plan is feasible.

The Plan Proponents are soliciting the acceptance of holders of impaired claims. Section 1126 of the Bankruptcy Code generally defines acceptance of a plan of reorganization, in the

case of a class of claims, as acceptance by holders of two-thirds in dollar amount and a majority in number of allowed claims of that Class with respect to which ballots have been submitted.

Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class of claim or interests accept the Plan or receive or retain under the Plan, on account of such claim or interest, property of a value as of the Effective Date of the Plan that is not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan, on account of such claim, property of a value, as of the Effective Date, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

**3.09. Best Interest of Creditors.** In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. The Plan proposes to liquidate the Debtor's primary assets and distribute the unencumbered proceeds to creditors. If this case was in a Chapter 7, a trustee would need to hire professionals to prosecute this case and any such sale of the Debtor's assets, which would in turn result in higher costs of administration and likely less funds distributed to creditors. Accordingly, the Plan satisfies the requirements of § 1129(a)(7).

**3.10. Confirmation Without Acceptance by All Impaired Classes ("Cramdown").** The Bankruptcy Court may confirm the Plan without acceptance by all of the impaired Classes of claims and interests if the requirements of Section 1129(b) of the Bankruptcy Code are satisfied, which include

(a) the Plan otherwise satisfies the requirements for confirmation;

(b) at least one impaired Class of claims or interests has accepted the Plan (without counting acceptances by insiders); and

(c) the Plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired Class that has not accepted the Plan.

**3.11. Unfair Discrimination.** As more fully set forth in the Bankruptcy Code, a plan of reorganization does not "discriminate unfairly" if a dissenting Class is treated substantially equally with respect to other Classes similarly situated and no class receives more than it is legally entitled to receive for its claims or interests. The Debtor does not believe that the Plan discriminates unfairly against any impaired Class of claims or interests.

**3.12**. **Fair and Equitable.** Section 1129(b) of the Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and equity security holders. The respective tests in relevant part are:

*Secured Creditors.* The Plan is "fair and equitable" to a class of secured claims if it provides that

(i) the secured creditor retains the lien(s) securing such creditor's claim and receives deferred cash payments of at least the allowed amount of such claim (of a value,

as of the Effective Date, of at least such secured creditor's interest in the estate's interest in such property); or

(ii) such secured creditor receives the indubitable equivalent of its claim (which may be satisfied by returning the collateral securing such creditor's claim to such creditor).

*Unsecured Creditors.* The Plan is "fair and equitable" with respect to a class of unsecured claims if on account of such creditor's Allowed Claim

(i) each impaired unsecured creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(ii) the holders of any claims or interests that are junior to the claims of (insert) the dissenting class do not receive or retain any property under the Plan.

**If all of the applicable requirements for confirmation of the Plan are met as set forth in §1129(a) of the Bankruptcy Code, except that any impaired Class rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to such rejecting Class.**

**3.13. Feasibility.** The Bankruptcy Code requires that Confirmation of a Plan not be likely to be followed by liquidation or need for further financial reorganization of the Debtor. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed his ability to meet his obligations under the Plan, and the Debtor does not believe confirmation of the Plan is likely to be followed by liquidation or the need for further financial reorganization.

**IV.     FINANCIAL PICTURE OF THE DEBTOR**

**4.01. History and Background of the Debtor.** The Debtor partnership was first formed in 2005 for the purpose of developing a high end residential community in Flower Mound, Texas. Shortly after its formation, the Debtor purchased two tracts of raw land with financing from Compass Bank and Frost Bank. The Debtor then platted the lots, put in streets and utilities as well as other amenities, such as a par three golf course, a four acre pond, extensive landscaping, a privacy wall and three fountains. The amenities were completed in the summer of 2007. The Debtor is a limited partnership whose two principals are Gary Evans and Corey Van Trease.

**4.02. Events Leading to Chapter 11.** The Debtor's marketing efforts were at an initial stage when the real estate market collapsed as part of the financial crash of 2008. Demand for luxury residential property evaporated and the lots stopped selling. The Debtor's funding source, which is a principal of one of the Debtor's partners, stopped funding the partnership and the loans went into default. Compass Bank posted the portion of the Debtor's lots, which were subject to the Compass lien. The Debtor filed a Chapter 11 to prevent Compass from foreclosing on its lots.

**4.03. Events Since Filing for Chapter 11.** Since the Petition Date, the Debtor has continued to operate its business and to manage its properties as debtor-in-possession pursuant to Section 1107 and Section 1108 of the Bankruptcy Code. With the approval of the Bankruptcy

Court, the Debtor retained Singer & Levick, P.C., 16200 Addison Road, Suite 140, Addison, Texas 75001, as general bankruptcy counsel.

Since the filing of the case, Compass Bank filed its Motion for Relief from Stay which motion was granted by Agreed Order dated April 23, 2010. Compass subsequently foreclosed on the lots and pursuant to the terms of the Agreed Order, granted to Debtor a $5.5 million credit based on the foreclosure.

Frost National Bank subsequently sued the guarantors Gary Evans and Corey Van Trease on their guaranties and obtained an Agreed Judgment on March 22, 2011.

An Agreed Order was entered on July 29, 2010 granting the Friends of Chateau du Luc permission to manage the subdivision until, *inter alia,* a plan is confirmed.

**4.04. Post-Confirmation Management.** Corey Van Trease is authorized to take all action on behalf of the Debtor reasonably necessary to carry out the terms of the Plan.

## V. CLASSIFICATION OF CLAIMS AND INTERESTS

**5.01.** The Allowed Claims of the creditors and of the Estate shall be classified as follows:

(1) **Class 1: Allowed Priority Claims of the IRS.** This Class consists of Allowed Claims entitled to priority under section 507(a) of the Bankruptcy Code of the Internal Revenue Service.

(2) **Class 2: Allowed Property Tax Claims.** This Class consists of all Allowed Secured Clams of any states or relevant municipalities and government entities against any of the Debtor for property taxes that are entitled to automatic first lien priority pursuant to their state laws or are entitled to secured status by virtue of the collateral that is located in such state and arose prior to tax year 2011.

(3) **Class 3: Allowed Frost Claim.** This Class consists of the obligations of the Debtor to Frost under the Frost Loan Documents.

(4) **Class 4: Allowed General Unsecured Claims.** This Class consists of all Allowed Unsecured Claims which are not entitled to priority under section 507(a) of the Bankruptcy Code, including all Claims secured by liens on the Frost Collateral other than the Claims of Frost and Property Tax Claims.

(5) **Class 5: Interests in the Debtor.** This class consists of all Interests in the Debtor.

## VI. TREATMENT OF CLAIMS AND INTERESTS

**6.01.** The Allowed Claims of the creditors and of the Estate shall be treated under the Plan as follows:

(1) **Class 1: Allowed Priority Claim of the IRS.** The Claim in Class 1 will be paid 100% of the Allowed Amount of the Claim on the later of 10 days after the Effective Date or 10 days after the Claim is Allowed. The Debtor shall use the Retainer to satisfy the Class 1 Claim.

(2) **Class 2: Allowed Secured Property Tax Claims.** Allowed Claims in Class 2 constitute all claims for ad valorem property taxes that accrued prior to tax year 2011. Such claims shall be entitled to interest from the Petition Date at the state statutory rate of 1% per month pursuant to 11 U.S.C. Sections 506(b) and 511 and post Effective Date interest until paid at the state statutory rate of 12% per annum pursuant to 11 U.S.C. Sections 511 and 1129. The Class 2 Claims secured by the Frost Collateral and the Unencumbered Lot shall be satisfied from the Net Frost Proceeds and the Net Unencumbered Proceeds, respectively, at closing of the sale pursuant to Article 6.01.

(3) **Class 3: Allowed Frost Claim.** Frost shall retain all Liens securing the Debtor's obligations under the Frost Loan Documents. The Frost Claim shall accrue post-petition interest at the default rate, as well as all charges and fees, including attorney's fees. The Net Proceeds of the sale of the Frost Collateral under Article 6.01 after payment to Class 2 Claimants with a lien on the Frost Collateral shall be paid to Frost and applied to the Frost Claim pursuant to the Frost Loan Documents. The Frost Claim remaining after application of the Net Proceeds shall be an unsecured claim entitled to distribution as a Class 4 Claim. Class 3 is Impaired and entitled to vote on the Plan.

(4) **Class 4: Allowed General Unsecured Claims.** The Debtor shall distribute any remaining Retainer, the Net Unencumbered Proceeds, as well as all other Debtor property or the proceeds thereof, pro-rata to Allowed Class 4 Claims until Class 4 Claims are paid 100% of their Allowed Claims. Class 4 is Impaired and entitled to Vote on the Plan.

(5) **Class 5: Interests in the Debtor.** Holders of Allowed Interests will retain their pre-petition interest in the Debtor until dissolution pursuant to Article 6.04 and shall not receive any distributions on account of such Interests until the satisfaction of all amounts due Classes 1 – 4.

## VII. IMPLEMENTATION OF THE PLAN

**7.01.** The Plan shall be implemented by:

**Sale of Frost Collateral and Unencumbered Lot**. Within fourteen (14) days of the Order confirming this Plan becoming a Final Order, the Debtor shall close on the sale of the Frost Collateral and Unencumbered Lot to JBGL Capital LP, its successors or assigns, pursuant to the Purchase Contacts attached as Exhibits "A" and B" hereto and incorporated herein unless a higher and better offer for the Frost Collateral and the Unencumbered Lot and proof of ability to close is provided to the Debtor and Frost no later than five (5) business days prior to the hearing on the confirmation of this plan. In the event of such a bid, the Debtor shall hold an auction for the Frost Collateral and the Unencumbered Lot at the Bankruptcy Court one hour before the time of the hearing set for confirmation of this Plan and the qualified bidders shall be JBGL Capital LP and all parties that timely tendered a higher offer and proof of ability to close. In the event of such an auction, the JBGL Capital LP Purchase Contracts shall be considered the initial bid and stalking horse offer, the initial overbid shall be $2,950,000.00, and JBGL Capital LP shall be entitled to a $150,000.00 break-up free from the proceeds of the Frost Collateral and Unencumbered Lot (90% from the proceeds of the Frost Collateral and 10% from the proceeds of the Unencumbered Lot) in the event that JBGL Capital LP is not the successful bidder and the Frost Collateral and Unencumbered Lot is sold to

9

another party for a gross purchase price of $2,950,000.00 or more. The normal and customary closing costs of the Debtor in the sale transaction and any applicable break-up fee due JBGL Capital LP will be satisfied from the sale proceeds.

The sale of the Frost Collateral and the Unencumbered Lot shall be free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f). Upon the closing of the sale of the Frost Collateral, all redemption and/or repurchase rights of the Debtor with respect to all property, including the Frost Collateral, the Unencumbered Lot, and any property foreclosed by Compass, shall be released and forever waived.

Upon confirmation of this Plan and the closing of such sale, the Debtor's engagement of Friends of Chateau du Lac, LLC pursuant to the Bankruptcy Court's Agreed Order Regarding Emergency Motion to Compel Debtor to Assume or Reject Executory Contract (Docket No. 49) shall be terminated. Upon confirmation of this Plan and closing, the purchaser of the Frost Collateral (the "Purchaser") shall succeed to all of the Debtor's right, title, and interest as Declarant under the Declaration. Upon confirmation of this Plan and closing, Purchaser shall be deemed the Declarant (as that term is defined in the Declaration) for all purposes, including under sections 2.15 and 2.16 of the Declaration, and all properties included within the Declaration. Notwithstanding any provision in the Declaration to the contrary, Purchaser's succession to the Debtor shall not constitute a Successor Declarant under section 2.43 of the Declaration, and therefore Purchaser's succession to the Debtor shall not terminate or otherwise modify the Debtor's current and continued status as the Declarant under section 2.15 of the Declaration; or trigger the end of the Declarant Control Period pursuant to section 2.16 of the Declaration. In the event of any conflict in the terms of the Declaration and this Plan, the Plan shall control.

**Liquidation of Other Property.** The Debtor shall liquidate all other property within thirty (30) days of the Effective Date.

**Management of the Debtor.** Corey Van Trease is authorized to take all action on behalf of the Debtor reasonably necessary to carry out the terms of this Plan. Despite any other management agreement previously in place, Corey Van Trease shall have sole authorization to act for the Debtor and carry out the terms of this Plan.

**Ongoing Operations.** Upon completion of the actions contemplated under this Plan, including specifically the sale of Frost Collateral pursuant to Article 6.01, the Debtor shall be dissolved.

## VIII. ALTERNATIVES TO THE PLAN - LIQUIDATION

**8.01.** If a plan of reorganization is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which a bankruptcy trustee would be appointed to liquidate the assets of the Debtor for distribution to the holders of claims against the Debtor in accordance with priorities established by the Bankruptcy Code.

**8.02. The Plan Proponents believe that a liquidation under Chapter 7 would result in little or no payments to unsecured creditors** due to (1) the current status of the real estate market, which is widely known, (2) the increased costs and expenses arising from fees payable to a bankruptcy trustee and attorneys and other professional advisors to such trustee in a chapter 7, (3) the erosion of the value of the Debtor's assets in the context of an expedited liquidation

required under chapter 7, particularly due to the necessity of maintaining insurance on the Properties, the ongoing taxes, and the "fire sale" atmosphere that would prevail. Further, a chapter 7 trustee would incur management and maintenance expenses as he operates the Property while listing it for sale. These costs, which would be significantly higher for a chapter 7 trustee required to engage a property manager than the Debtor's costs in performing these tasks himself, would further erode the distribution

## IX. RISK FACTORS

**9.01. ARE THERE ANY RISK FACTORS? Claimants should be aware that there are some risks involved under the Plan because the Plan relies upon the sale and closing of the Debtor's property.**

## X. RETENTION OF JURISDICTION

**10.01.** The Bankruptcy Court's jurisdiction shall be retained under the Plan to the full extent provided by Title 28 and Title 11 of the United States Code. This Plan shall be the sole and exclusive remedy for any creditor of the Debtor dealt with in the Plan, so long as the Debtor is not in default under the Plan.

## XI. TAX CONSEQUENCES TO THE DEBTOR AND OTHERS

**11.01.** Implementation of the Plan may result in state and federal income tax consequences to the holders of claims and to the Debtor.

Section 1115 of the Bankruptcy Code, as enacted by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005 (BAPCPA) provides that, for individual chapter 11 debtors, property of the estate includes property acquired after filing, but before closure, dismissal, or conversion. It also provides that property of the estate includes earnings from services performed after filing, but before closure, dismissal, or conversion. IRS Notice 2006-83 established policies and procedures related to the fact that such property and services are subject to taxation as part of the individual chapter 11 estate. With some exceptions, when 11 U.S.C. § 1115 is read in conjunction with section 1398(e)(1) of the Internal Revenue Code, the IRS guidance notes that the bankruptcy estate is a taxable entity separate from the debtor and must include in its gross income both post-petition property and post-petition services.

Because the bankruptcy estate is a separate taxable entity, the trustee or debtor in possession must obtain an employer identification number (VIN) for the estate, I.R.C. § 6109, and the trustee or debtor-in-possession must use the EIN on any tax returns filed for the estate. The individual debtor must continue to file his or her own individual tax returns during the bankruptcy proceedings. IRC. § 6012(a)(1).

Section 1115 provides that post-petition self-employment income is property of the estate. However, because neither section 1115 nor section 1398 of the Internal Revenue Code addresses the application of the self-employment tax to the earnings from the individual debtor's continuing services, the IRS has counseled that a self-employed debtor must continue to report the debtor's self-employment income earned post-petition on Schedule SE of the debtor's individual tax return, and must pay the resulting self-employment tax imposed by I.R.C. § 1401.

The debtor must attach a statement to his or her income tax return stating that he or she filed a Chapter 11 bankruptcy case. The statement must reflect the allocations of income and withheld income tax and must describe the method used to allocate income and withheld tax between the debtor and the estate. The statement is to list the filing date of the bankruptcy case, the bankruptcy court in which the case is pending, the bankruptcy court case number, and the bankruptcy estate's EIN. The debtor-in-possession or trustee must attach a similar statement to the income tax return of the estate.

IRS Notice 2006-83 provides numerous other requirements and guidelines for individuals who file bankruptcy cases under Chapter 11 of the Bankruptcy Code. The debtor-in-possession has obtained an EIN number and the accountant for the debtor and debtor-in-possession is preparing separate tax returns in accordance with the applicable provisions of the Internal Revenue Code, the United States Bankruptcy Code, and IRS Notice 2006-83.

**11.02.** Tax consequences to a particular creditor will depend on the particular circumstances or facts regarding the claim of the creditor. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## XII. LITIGATION

**12.01. Preservation of Causes of Action.** Any and all causes of action which the Debtor may have, or which may arise under any of the provisions of the Code, or which may be enforceable under any of the provisions of the Code or any other law or statute, including claims of the Debtor and the estate, shall be preserved, including without limitation those described herein. The Bankruptcy Court shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes of action unrelated to bankruptcy, whether denominated core or non-core matters, or whether "related or otherwise related" matters, to the extent provided by Title 11 and Title 28 of the United States Code. All such causes of action shall belong to the Debtor upon the Effective Date. To the extent any cause of action shall be non-transferable to the Debtor, the Debtor shall prosecute such cause of action for the benefit of the Estate.

## XIII. SUMMARY

The Plan Proponents filed this Disclosure Statement and the respective Plan, and favor acceptance of this Disclosure Statement and Confirmation of the Plan. There exists no other option that offers a more efficient and immediate liquidation of the Debtor's property or more favorable distribution to unsecured creditors than that proposed in this Disclosure Statement and Plan. Creditors will receive the same or more under the Plan than if the Debtor were liquidated under a Chapter 7, because a Chapter 7 would involve additional time and uncertainty, as well as higher fees and expenses of administration.

DATED: September 16, 2011.

Respectfully submitted,

| | |
|---|---|
| QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C. 2001 Bryan Street, Suite 1800 Dallas, TX 75201 (214) 871-2100 (Telephone) (214) 871-2111 (Facsimile) | ELSEY & ELSEY 3212 Long Prairie Road, Suite 200 Flower Mound, Texas 75022 Telephone: 972-906-9695 Facsimile: 972-906-7998 |
| By: */s/ Hudson M. Jobe* Hudson M. Jobe State Bar No. 24041189 | By: */s/ Chuck Elsey* Chuck Elsey State Bar No. 24001489 |
| **ATTORNEYS FOR THE FROST NATIONAL BANK** | **ATTORNEYS FOR COREY VAN TREASE** |